Argued and submitted February 19, affirmed April 6, 1988

McCOY et al,
*Respondents,*

*v.*

LINN COUNTY,
*Respondent Below,*
*and*

BENTLEY et al,
*Petitioners.*

(LUBA 87-046; CA A47082)

752 P2d 323

Steven Schwindt, Canby, argued the cause for petitioners. With him on the brief was Reif and Reif, Canby.

Charles H. Combs, Oregon City, argued the cause and filed the brief for respondents.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioners seek review of LUBA's remand of Linn County's decisions adding a 25-acre area to the county's Goal 5 inventory of aggregate extraction sites and granting petitioners a conditional use permit for extraction and processing operations in that area. Petitioners' first assignment is the only one which warrants discussion. They argue that LUBA erred by rejecting the county's interpretation of section 21.480.1 of its zoning ordinance and the county's determination that petitioners' application met that section's requirement for a conditional use permit. The section provides that the

"location, size, design and operating characteristics of the proposed development will be compatible with and will not adversely affect the livability or appropriate development of abutting properties and the surrounding neighborhood."

LUBA concluded that, although the county's findings may have shown that the proposed operations were compatible with and would not adversely affect appropriate abutting and surrounding development, the findings did not demonstrate that livability in adjacent and nearby residential areas would not be adversely affected. We agree with LUBA that the findings do not demonstrate that the development will be compatible with and will not adversely affect livability in the area. However, the county argued below, and petitioners argue here, that LUBA incorrectly construed the ordinance to require a development to satisfy *both* the livability and the appropriate development criteria of section 21.480.1. Petitioners explain:

"LUBA's interpretation of that Ordinance requires the County and the Appellant to prove that the location, size, design and operating characteristics of the proposed development will be compatible with and will not adversely affect *both* the livability *and* the appropriate development of abutting properties and the surrounding neighborhood. LUBA requires that the County demonstrate or define the livability of the area and then ensure that there will be no adverse effects on that livability.

"The County's interpretation says that Linn County Zoning Ordinance 21.480(1) must be interpreted in the disjunctive, rather than the conjunctive. In other words, the County has the option of either examining the livability and

applying the standard to the livability, or examining the appropriate development of abutting properties in the surrounding neighborhood, then applying the compatibility and no adverse effect standard against that. The Record and Conditions also demonstrate that the County did in fact comply with conjunctive standards and the interpretation required by LUBA.

"It is the standard in Oregon that courts will defer to a local body's interpretation of its own enactments, if the interpretation is reasonable. *Alluis v. Marion County,* 64 Or App 478, 668 P2d 1242 (1983). The County's interpretation is reasonable, for if it wanted to impose an examination of both livability and the appropriate development of abutting properties in the surrounding neighborhood, it could have easily said so in the Ordinance. Rather, it uses the disjunctive 'or', giving it the option to interpret either livability [or] the appropriate development of abutting properties and surrounding neighborhoods." (Emphasis petitioner's.)

Relying on *Alluis v. Marion County,* 64 Or App 478, 668 P2d 1242 (1983), LUBA agreed with petitioners that it was required to defer to the county's interpretation of the ordinance if that interpretation was reasonable. However, LUBA concluded that the interpretation was not reasonable.

We do not agree with LUBA's understanding of its scope of review. We said in *Alluis v. Marion County, supra:*

"Our review begins with a recognition that this court will defer to a local body's interpretation of its own enactments, if the interpretation is reasonable. *Miller v. City Council of Grants Pass,* 39 Or App 589, 594, 592 P2d 1088 (1979); *Heilman v. City of Roseburg,* 39 Or App 71, 77, 591 P2d 390 (1979); *see Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 581 P2d 50 (1978) (local interpretation entitled to 'some weight')." 64 Or App at 481. (Footnote omitted.)

However, we later said in *Gordon v. Clackamas County,* 73 Or App 16, 698 P2d 49 (1985), in discussing a similar contention:

"That argument may have its genesis in imprecise language in some of the Supreme Court's and our opinions relating to judicial 'deference' to local interpretations and relating to the right and duty of local governments to construe their own legislation in the first instance.

"However, it has *never* been the law that LUBA or the courts are in any way *bound* by local interpretations. The

Supreme Court explained in *Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 599, 581 P2d 50 (1978):

> " '*The courts are finally responsible,* but we believe that it is the [local governing body] itself, composed as it is of popularly elected local officials directly accountable to their constituency * * * that, in the first instance, should have the power and right to interpret local enactments. *Cf. Green v. Hayward,* 275 Or 693, 706, 552 P2d 815 (1976) (interpretation of county comprehensive plan).

> " '*While the interpretation of the board cannot supplant our duty that interpretation is entitled to some weight* unless it is clearly contrary to the express language and intent of the [legislation].' (Emphasis supplied.)

"*See also Fisher v. City of Gresham,* [69 Or App 411, 416, 685 P2d 486 (1984)]; *West Hills & Island Neighbors v. Multnomah Co.,* 68 Or App 782, 786, 683 P2d 1032, *rev den* 298 Or 150 (1984). The meaning of local legislation, like the meaning of any statutory language, is a question of law that the courts and other reviewing tribunals must decide. The weight that local interpretations should be accorded in connection with such decisions is instructive rather than binding in nature. The courts cannot be finally responsible for the interpretation of legislation if they are bound to follow the interpretations of those who do not have final responsibility." 73 Or App at 20-21. (Emphasis in original.)

*See also Pounds v. Board of Trustees,* 89 Or App 552, 749 P2d 1227 (1988); *Mason v. Mountain River Estates,* 73 Or App 334, 340, 698 P2d 529, *rev den* 299 Or 314 (1985).

■ The quoted statement from *Alluis v. Marion County, supra,* and similar language in other decisions of this court, have often been understood to imply that the enacting body's after-the-fact interpretation of local legislation is entitled to more weight on review than its correctness warrants and that deference must be accorded to a local interpretation which is wrong but not "unreasonably" so. We reiterate what we made clear in *Gordon v. Clackamas County, supra,* and what the Supreme Court made reasonably clear in *Fifth Avenue Corp. v. Washington Co.,* 282 Or 591, 581 P2d 50 (1978), that the meaning of local legislation is a question of law which must be decided by the courts and other reviewing bodies to which it is presented. Although the local interpretation must be considered on review, the reviewing tribunal's acceptance or rejection of the interpretation is to be determined solely by

whether, in the tribunal's opinion, the interpretation is right or wrong.[1]

■    We agree with LUBA that the county's and petitioners' understanding of section 21.480.1 is not correct. It is not a tenable interpretation that an ordinance provision, which specifies that livability and appropriate development are protected values, was intended to allow county officials to make *ad hoc* choices to protect one of those values and disregard the other in response to different permit applications. Petitioners are correct that the word "or," which separates the livability and appropriate development criteria in section 21.480.1, is a "disjunctive" term. Petitioners are incorrect, however, in their understanding of what the ordinance treats disjunctively. It does not contemplate that a proposed development may qualify for approval if it *satisfies* either criterion; the meaning of the provision is that approval cannot be granted if either of the criteria is *not satisfied* by the proposal. LUBA correctly construed the ordinance and correctly rejected the county's interpretation.[2]

Affirmed.

---

[1] It may be that the reviewing body's opinion should be more influenced by the local body's construction when the provision is ambiguous and when the local interpretation is based on legislative history to which the local entity has peculiar access. *See Fisher v. City of Gresham,* 69 Or App 411, 685 P2d 486 (1984). However, no such considerations are present here. Section 21.480.1 cannot be regarded as ambiguous, despite petitioners' strenuous efforts to read it as meaning something other than it does.

[2] LUBA based its interpretation on the relationship of section 21.480.1 to other relevant provisions of the zoning ordinance, as well as on the language of the section itself. Although we agree generally with the other prong of LUBA's analysis, we do not consider it necessary to look beyond the section's language to reject the county's and petitioners' proffered interpretation.

The county has repealed section 21.480. Its requirements are now duplicated in substance in section 21.435.5 of the ordinance. LUBA and the parties have treated section 21.480.1 as the applicable provision, and we also do so.