Argued and submitted January 22, on appeal, judgment modified to delete award of attorney fees and pre-judgment interest and affirmed as modified; affirmed on cross-appeal March 14, reconsideration denied June 6, petition for review denied July 3, 1990 (310 Or 133)

## HARRINGTON,
*Respondent - Cross-Appellant,*

*v.*

## BOARD OF TRUSTEES,
City of Portland Fire and Police
Disability and Retirement Fund,
*Appellant - Cross-Respondent.*

(A8712-07387; CA A51185)

788 P2d 1019

William R. Selby, Senior Deputy City Attorney, Portland, argued the cause for appellant - cross-respondent. With him on the briefs was Bryan Cavaness, Associate Deputy City Attorney, Portland.

Linda K. Eyerman, Portland, argued the cause for respondent - cross-appellant. With her on the briefs was Gaylord, Thomas & Eyerman, Portland.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

**EDMONDS, J.**

Respondent Board of Trustees of the City of Portland Fire and Police Disability and Retirement Fund (Board) appeals, and petitioner Harrington cross-appeals, from a judgment modifying the Board's decision to terminate Harrington's disability benefits. We modify the judgment on appeal and affirm on the cross-appeal.

Harrington was employed by the Portland Police Bureau and was a member of the Fire and Police Disability, Retirement and Death Benefit Plan. In October, 1986, the Board granted her application for service connected disability benefits retroactive to July, 1986. In March, 1987, at the Board's request, Harrington was examined by its physician. After the examination, Harrington was ordered to appear before the Board and show cause why her benefits should not be terminated. At the conclusion of the May, 1987, hearing, the Board found that Harrington was capable of returning to duty and terminated her benefits. Harrington immediately requested the appointment of a three member medical review panel under section 5-107 of the Charter of the City of Portland. In July, 1987, the panel issued a written report. The Board asked the panel to clarify the report. Two of the panel members responded in writing. Subsequently, in October, 1987, the Board reaffirmed its decision to terminate Harrington's benefits as of May, 1987.

Harrington sought review in circuit court. ORS 34.010 *et seq.* On review, the court ruled that Harrington's benefits should have been terminated effective October, 1987, rather than May, 1987, and modified the Board's decision accordingly. The court awarded Harrington pre-judgment interest and attorney fees.

The Board assigns error to the court's ruling that the Board misinterpreted the charter when it terminated Harrington's benefits effective May, 1987. Section 5-115 of the charter provides, in relevant part:

"Upon duly verified application of a member and a finding by the Board that through injury suffered in the line of duty, the member is or has been unable to perform his or her required duties, said member shall be paid service-connected disability benefits equal to but not in excess of his full salary from the

Fund until such member recovers or for a period of one (1) year, whichever period is shorter."[1]

Section 5-107 provides, in relevant part:

"[The Board] shall hear and determine all applications for pensions or benefits as hereinafter provided for; provided, however, that the Board shall review any of its determinations based upon the findings of its physicians or psychiatrists upon the written request of any applicant; in such cases, it shall refer any matter concerning a question of physical or mental condition to three (3) physicians or psychiatrists * * *; the Board may re-refer the matter to the physicians or psychiatrists for clarification * * *. The Board * * * shall base its findings upon review on the findings of the majority of said panel of physicians or psychiatrists as to the mental or physical condition of the member. * * * The Board may order any member drawing benefits or pension for disability to appear, submit to and undergo physical and mental examination; after the Board acts upon the basis of such examination, such member may request in writing the appointment of a panel of physicians or psychiatrists and in such cases, the procedure set forth above relating to such panels and their findings shall be followed. *If* the Board determines from its review of the findings of a majority of said panel of physicians or psychiatrists that such member is no longer entitled to draw benefits or pension for disability as a result of change in his physical or mental condition, the Board shall *forthwith* cease payments of such pension or benefits.

"Any person adversely affected by a determination of the Board based upon the findings of its physicians or psychiatrists, desiring a review of such determination, may apply for review by a three (3) member medical panel by filing with the Secretary of the Board a written request for such review within thirty (30) days after such determination by the Board." (Emphasis supplied.)

The Board argues that Harrington was entitled to receive benefits only until May, 1987, when it initially determined that she had recovered. It contends that section 5-115, which provides that benefits continue "until [the] member recovers," is controlling and would have us interpret the charter to allow it to terminate benefits at the time that it makes

---

[1] Section 5-115 further provides that a member who has not recovered at the end of one year will continue to receive benefits, although in some cases, the amount of the benefits will be reduced.

its preliminary determination based on the findings of its own doctors.

The meaning of legislation is a question of law. Although we give "some weight" to a local government's interpretation of its own legislation, we are not bound by that interpretation. *McCay v. Linn County,* 90 Or App 271, 752 P2d 323 (1988); *Pounds v. Board of Trustees,* 89 Or App 552, 555, 749 P2d 1227 (1988).

If possible, we must read sections 5-115 and 5-107 in a manner to give effect to each provision. *See Kankkonen v. Hendrickson,* 232 Or 49, 67, 374 P2d 393 (1962). The Board's interpretation would render meaningless the language in section 5-107 that instructs the Board to terminate benefits "forthwith" "if" the Board determines from its review of the medical panel's findings that the member is no longer entitled to benefits. We read sections 5-115 and 5-107 to provide that "recovery" in context means more than physical or mental recovery. It refers to a determination by the Board. When recovery occurs depends on when the Board makes its final determination. If the member does not request a review panel after the Board's initial determination that the member is no longer entitled to benefits, that determination is final and the member is deemed recovered. However, if the member does request review, the member cannot be deemed recovered until the Board finally determines that the member is no longer entitled to benefits based on the panel's findings. It is then that payments must stop "forthwith."

Contrary to what the Board argues, the language in section 5-107 regarding review panels is not rendered meaningless by our reading. As stated earlier, an initial determination of the Board to terminate benefits will not always be a *final* determination. We agree with the circuit court that the Board misinterpreted the charter and that it could not properly terminate Harrington's benefits until October, 1987, when it made its final determination.

Next, the Board argues that the circuit court should not have awarded Harrington pre-judgment interest or attorney fees. Pre-judgment interest or attorney fees cannot be recovered unless expressly authorized by statute or contract. *Lewis v. Dept. of Rev.,* 294 Or 139, 142, 653 P2d 1265 (1982); *Mayer/Kelinknecht v. Bassett,* 263 Or 334, 348, 501 P2d 782

(1972). Contrary to what Harrington argues, ORS 82.010(1)(a)[2] does not authorize the interest award. *See Seton v. Hoyt,* 34 Or 266, 274, 55 P 967 (1899); *Albany General Hospital v. Dalton,* 69 Or App 204, 684 P2d 34, *rev den* 298 Or 68 (1984).

 Regarding attorney fees, Harrington argues that we should uphold the award because of ORS 656.027, which provides, in relevant part:

"All workers are subject to [the Workers' Compensation Law] except * * *:

"* * * * *

"(6) Workers of any city having a population of more than 200,000 that provides by ordinance or charter compensation equivalent to compensation under [the Workers' Compensation Law]."

Harrington contends that, if she was subject to the Workers' Compensation Law rather than the charter, she would be entitled to attorney fees and that she is therefore entitled to attorney fees under the charter. However, ORS 656.027(6) provides for equivalent "compensation." That term does not include attorney fees.[3] *See* ORS 656.005(8); *Dotson v. Bohemia, Inc.,* 80 Or App 233, 720 P2d 1345, *rev den* 302 Or 35 (1986).

Because of our disposition of the appeal, we need not reach the remaining issues. We find no merit to Harrington's cross-appeal.

On appeal, judgment modified to delete award of attorney fees and pre-judgment interest and affirmed as modified; affirmed on cross-appeal.

---

[2] ORS 82.010(1)(a) provides:

"(1) The rate of interest for the following transactions, if the parties have not otherwise agreed to a rate of interest, is nine percent per annum and is payable on:

"(a) All moneys after they become due; but open accounts bear interest from the date of the last item thereof."

[3] Harrington also argues that we should uphold the attorney fee award on the basis of Article I, section 20, of the Oregon Constitution. However, ORS 656.027(6) defines a class that is exempt from the Workers' Compensation Law because it is entitled to equivalent compensation. We cannot say that the legislature made an irrational choice in defining such an exemption. *See State v. Day,* 84 Or App 291, 733 P2d 937, *rev den* 303 Or 535 (1987).