Argued and submitted September 2, reversed and remanded October 8, 1997

## RECOVERY HOUSE VI,
*Petitioner,*

*v.*

## CITY OF EUGENE,
*Respondent.*

## (LUBA No. 97-021; CA A98493)

946 P2d 342

Michael E. Farthing argued the cause for petitioner. With him on the brief was Gleaves Swearingen Larsen Potter Scott & Smith LLP.

Jerome Lidz argued the cause for respondent. With him on the brief were Emily K. Newton and Harrang Long Gary Rudnick P.C.

Before Haselton, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

DEITS, C. J.

## DEITS, C. J.

Petitioner Recovery House VI appealed to LUBA from the City of Eugene's issuance of a conditional use permit for which petitioner had applied. LUBA held that it lacked "jurisdiction" to consider petitioner's argument that petitioner was not required to obtain a conditional use permit in order to conduct the use in question.[1] Petitioner seeks review, and we reverse and remand.

Petitioner applied for the permit in connection with a "recovery house" that it operates in a residential zone, housing 16 unrelated men who are recovering from alcohol or drug dependency. Petitioner had operated the facility for approximately nine months before it applied for the permit. Petitioner believed that its use was a permitted one in the zone, for which no conditional use permit was required. However, as explained by LUBA, petitioner was "prompted" to apply for the permit by various city actions and by "the city's demand that [petitioner] file an application for a conditional use permit in order to continue its operation." *See* note 4.

Petitioner filed the application but asserted that it was not required to obtain a conditional use permit for this use. "Single-family dwellings" are a permitted use in the zone. Section 9.015 of the Eugene Code defines "[d]welling, single family attached," *inter alia*, as "a freestanding building *designed or used* for the occupancy of one family, with housekeeping facilities for only one family." (Emphasis supplied.) According to petitioner, although the occupants of its facility are not members of the same family, the building in which it conducts its operation was designed for occupancy by a single family; hence, the use is a permitted one.

The application was first considered by a city hearings officer, who denied the application. Petitioner appealed the hearings officer's decision to the city planning commission. The commission first addressed at length and expressly

---

[1] LUBA concluded, in essence, that it lacked jurisdiction over the *issue*, although it had jurisdiction over the *appeal*. Because petitioner raised no other issues, LUBA affirmed the city's decision. We will sometimes refer to the determinative question, and to LUBA's answer, as matters of reviewability rather than of jurisdiction.

rejected petitioner's contention that the use qualified as a permitted single-family dwelling for which a conditional use permit was not required. The principal basis for the commission's disagreement with petitioner's theory that the facility was a permitted single-family dwelling as defined by section 9.015 was that, if the phrase "designed *or* used" were to be read literally, intense nonresidential uses would be permitted in the zone in structures that were originally designed for one-family residential use. Having concluded that petitioner's proposed use was not "permitted outright," however, the commission approved petitioner's conditional use permit application, subject to a number of conditions.

Petitioner appealed the planning commission's decision to LUBA and assigned error only to the commission's conclusion that the use was not "permitted as of right" but was subject to the conditional use permit requirement.[2] The city asserted in response that the issue that petitioner sought to raise before LUBA was "moot" and was "not justiciable," because, *inter alia*, "the [c]ity gave petitioner what it asked for—the [conditional use permit]." LUBA essentially agreed. It explained:

"[P]etitioner did not follow a formal procedure to obtain an interpretation that no conditional use [permit] was required. *Cf. Medford Assembly of God v. City of Medford,* 297 Or 138, 681 P2d 790 (1984), [*cert den* 474 US 1020 (1985)] (a formal determination, even though only declaratory, that a conditional use permit is required is a land use decision). *See also General Growth v. City of Salem,* 16 Or LUBA 447 (1988) (where city's decision was not rendered pursuant to a code declaratory ruling procedure, it is not reviewable by LUBA under *Medford Assembly of God*). Petitioner instead applied for a conditional use permit. We agree with the city that by complying with the city's demand that it file an application for a conditional use permit in order to continue its operation, petitioner accepted the validity of that demand, at least for the purposes of the proceeding on its application. Because it cannot be presented to us in an appeal of the conditional use permit that petitioner applied for and that the city actually granted, we

---

[2] LUBA noted in its opinion that some of the conditions that the planning commission attached to the approval "are unacceptable to petitioner." However, petitioner did not assign error to any of the conditions.

express no opinion on the question of whether the city properly determined that a conditional use permit was required in the first place." (Footnotes omitted.)

■ Petitioner now contends to us that LUBA erred in concluding that the issue was not reviewable. We agree with petitioner. We do not attach the significance that LUBA did to the fact that petitioner did not seek a declaratory determination concerning the need for a conditional use permit. *Medford Assembly of God* and the other appellate court cases relating to local declaratory rulings have been concerned with whether *those* rulings are themselves reviewable as "land use decisions," not with whether they might somehow be the *exclusive* means of proceeding at the local level in order to procure a decision that is subject to LUBA's review authority.[3] *See Owen Development Group, Inc. v. City of Gearhart,* 111 Or App 476, 826 P2d 1016 (1992). Indeed, in holding that the declaratory determination that the petitioners appealed to LUBA in *Owen Development Group* was *not* a reviewable land use decision, we suggested that an application for a conditional use permit instead of the declaratory determination might be the preferable means by which the petitioners in that case could obtain a reviewable local decision. 111 Or App at 481.

Moreover, unlike the city in *Medford Assembly of God,* the city here has no procedure in its land use legislation for declaratory determinations. Given that, the procedure that petitioner pursued in this case would appear to be an alternative route to the same destination as the one that the petitioners followed in the Medford case. The local procedure that petitioner followed here, and the local decision that resulted, do not differ in any meaningful way from the procedure and decision that the Supreme Court held were sufficient to invoke LUBA's jurisdiction in *Medford Assembly of God.*

---

[3] The city suggests that petitioner's recourse was to await an enforcement action against it pursuant to ORS 197.825(3). Petitioner could have done so, but it was not obligated to do so. Insofar as the city or LUBA intended the implication that an enforcement action by the city against petitioner was *petitioner's* "exclusive remedy" or that the possibility of such an action affects the jurisdictional question here, we disagree.

The petitioner in that case sought a local determination through a declaratory process that it was not required to obtain a conditional use permit for a school, after city officials had apprised it that a permit was necessary. Under materially identical circumstances, petitioner here sought essentially the same kind of determination as part of its application for the conditional use permit. The question of whether a permit was required was presented to and decided by the planning commission. The commission's determination entailed an application of section 9.015 and other provisions of the city's land use regulations. As such, it comes squarely within the definition of a "land use decision" in ORS 197.015(10)(a)(A).

The crux of LUBA's reasoning on the reviewability question is contained in its statement that,

> "by complying with the city's demand that it file an application for a conditional use permit in order to continue its operation, petitioner accepted the validity of that demand, at least for the purposes of the proceeding on its application."

LUBA's rationale appears to be an analog of the "invited error" principle, and rests on the premise that petitioner got what it asked for. However, petitioner did not get what it *asked* for; it may have gotten what it *applied* for, but the application was effectively compelled by the city, and the principal argument that petitioner made—and that the city answered adversely—in the proceedings on the application was that petitioner was not required to apply for or to have the conditional use permit in order to conduct the recovery house operation.[4]

In sum, in the city proceedings on its application, petitioner raised and the planning commission decided the question of whether a conditional use permit was required.

---

[4] There are suggestions in the city's brief that it did not compel petitioner to apply for the permit, "formally" or by threat of adverse consequences, and that the reasons for the application are other than petitioner characterizes and LUBA determined them to be. The city does not, however, cross-assign error to LUBA's pivotal conclusions on those matters. In any event, the record fully supports LUBA's conclusion that petitioner was induced by city actions, in connection with this proceeding and at least one related earlier proceeding, to make an application that it would not have chosen to make but for the city's compulsion.

The planning commission's answer involved an application of the city's land use regulations and therefore comes within the statutory definition of a "land use decision." The answer was adverse to petitioner's position. Finally, insofar as the city argues or LUBA held, there was no *required* alternative to the conditional use permit application that petitioner could have or had to follow in order to raise the question.

 We hold that LUBA had authority to review the planning commission's conclusion that petitioner's operation requires a conditional use permit. The next question is whether we should remand the case to LUBA to address the merits of that issue, or whether we should proceed to resolve the merits now. In *Holland v. City of Cannon Beach*, 138 Or App 340, 908 P2d 838 (1995), we affirmed a decision of LUBA's in all other respects but remanded the case to LUBA to consider whether a particular statute was applicable to the local decision and, if so, with what effect. The Supreme Court took review of the case and held that the question we remanded was a "purely legal" one that this court should decide rather than remand to LUBA. 323 Or 148, 915 P2d 407 (1996). *See also Gisler v. Deschutes County*, 149 Or App 528, 945 P2d 1051 (1997) (following *Holland*). Arguably, the principal issue on the merits that the parties dispute before us here is also, at least in part, a legal one, *i.e.*, the meaning of the city legislation defining whether the site of petitioner's operation is a single-family dwelling and is therefore a permitted rather than a conditional use in the zone.[5]

We note initially that we do not understand *Holland* to state a universal principle that there can *never* be a remand to LUBA when the only questions that remain to be answered, after our review of a LUBA decision, appear to be legal in character. If the three-page per curiam opinion in *Holland* were read that broadly, it would be inconsistent with other Supreme Court decisions in which that court has remanded "purely legal questions" to LUBA. *See, e.g., Columbia Steel Castings Co. v. City of Portland*, 314 Or 424, 840

---

[5] The planning commission's interpretation of the city provisions is not subject to a deferential review standard. *Gage v. City of Portland*, 319 Or 308, 877 P2d 1187 (1994).

P2d 71 (1992). Whether a particular case calls for further proceedings in the inferior tribunal rather than a final decision by the reviewing body can often depend, at least in part, on the specifics of the case. As we read it, *Holland* does not say otherwise.

Moreover, this case differs in a fundamental way from *Holland* and *Gisler*. In both of those cases, LUBA had addressed the merits of the arguments that the parties had made to it, and the parties had presented defined assignments of error and responses to us that challenged or supported LUBA's disposition. Here, conversely, LUBA's conclusion on the "jurisdictional" issue made it unnecessary for it to consider the parties' arguments on the merits at all. Stated another way, LUBA has not exercised the jurisdiction that we hold it has over the city land use decision that petitioner has appealed to it and over the merits of the parties' arguments in that appeal.

■ For that reason, we do not consider the dispositional approach that was followed in *Holland* to be the appropriate one here. ORS 197.825 confers exclusive jurisdiction on LUBA to review local land use decisions, while ORS 197.850 gives this court jurisdiction to review LUBA's decisions. It is true, as the court noted in *Holland* and as we had earlier said in *Reusser v. Washington County*, 122 Or App 33, 857 P2d 182, *rev den* 318 Or 60 (1993), that we do not follow any deferential principle of review with respect to LUBA's rulings on questions of law. However, it is also clear that we have no authority under the statutory scheme to review local land use decisions directly—or, in effect, to perform LUBA's role. That is essentially what we would be doing, were we now to address the merits of the issues that the parties presented to LUBA and that it did not consider because of its view that it lacked the authority to do so.

In addition, the expeditiousness of the process also militates in favor of a remand to LUBA under these circumstances. *See* ORS 197.805. Before LUBA has addressed the merits—and before the parties have had the opportunity to present assignments challenging or arguments defending LUBA's resolution of the merits—this court cannot always know whether the seemingly "purely legal issues" that might

appear at first blush to be definitive will necessarily prove to be either definitive or purely legal. Neither the speed of the process nor the correctness of decisions would be promoted by our deciding questions that are clearly legal and then remanding cases for LUBA to consider other questions, the answers to which might very conceivably make our answers to the legal questions academic or advisory.

Here, for example, the parties' arguments to us seem *in the main* to treat the meaning of the city legislation as the dispositive question, but the parties also disagree in some instances about what facts the hearings officer and the planning commission found. Depending on which party's understanding is correct, it is at least arguable that the appropriate disposition of the appeal to LUBA *could* be a remand to the city to clarify how its findings support its conclusions. Equally possibly, the parties' disagreements about the facts and what the city found will not prove to be of any ultimate dispositional consequence.[6]

In any event, what is of consequence is that we cannot say with assurance at this point that this case is susceptible to a decision on *purely* legal grounds. We can say, however, that the process of defining the correct questions and the answers to them, by the parties and the deciding tribunals, is likely to be enhanced under circumstances of the kind involved here, if LUBA and we perform the sequential respective roles that the legislature has assigned to us. We remand for LUBA to address the merits of petitioner's appeal.

Reversed and remanded.

---

[6] We emphasize that our discussion in this paragraph in the text is meant only to illustrate why *we* cannot say with assurance that we can advance the case to the point of resolution by answering any legal questions now. We do not suggest what issues will require consideration by LUBA in it review of the merits.